In Re: Condemnation of Property of Thomas A. Reynolds and Katherine L. Reynolds, His Wife, in the City of Arnold, Etc. City of Arnold, Appellant.

Argued March 2, 1983, before President Judge CRUMLISH, JR. and Judges MACPHAIL and BARBIERI, sitting as a panel of three.

*Louis H. Ceraso,* for appellant.

*James C. Sinwell,* for appellee, Mac-Beth Realty, Inc.

OPINION BY JUDGE BARBIERI, April 12, 1983:

The City of Arnold (City) appeals here from an opinion and order of the Court of Common Pleas of Westmoreland County distributing the damages awarded in a condemnation proceeding. We affirm.

The facts in this case are not in dispute. On May 19, 1966, Thomas A. Reynolds and his wife, Katherine L. Reynolds executed a $75,000 mortgage in favor of the Security First Savings and Loan Association on a property they owned in Westmoreland County. This mortgage was duly recorded and was subsequently transferred, by a recorded instrument, to Mac-Beth Realty, Inc. (Mac-Beth) on September 30, 1975.

Thereafter, in 1976, the City filed an action in equity against the Reynolds to have a fire damaged

building on their property declared a public nuisance. When no defense was offered to this action, the building was so declared and the Reynolds were directed to remove it. In its final decree, the Court authorized the City to remove the building at the Reynolds' expense if they had not removed it as of January 5, 1977. When the Reynolds took no action in response to the court's final decree, the City demolished the building at a cost of $15,500.00. The City took no further action, however, to file a lien against the property.

Finally, on June 12, 1981, the Westmoreland County Housing Authority (Authority) filed a Declaration of Taking against the property, and the estimate of just compensation was subsequently set at $12,500.00. When both the City and Mac-Beth claimed first priority to this damage award, the Authority, pursuant to the provisions of Section 521 of the Eminent Domain Code,[1] 26 P.S. §1-521, petitioned the court of common pleas to distribute the damages. Before the court, the issue framed by the parties was whether or not the City had a valid "municipal claim" within the intendment of Section 1 of the Act of May 16, 1923 (Act), P.L. 207, *as amended*, 53 P.S. §7101.[2] The court subsequently concluded, however, that the city did not have a valid municipal claim since, under the provi-

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-521.

[2] The City asserts that a valid municipal claim would have first priority to an award in a condemnation proceednig under the provisions of Section 3 of the Act, 53 P.S. §7106, which reads in part as follows:

All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonweath . . . shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation . . . save and except only the costs of the sale and of the writ upon which it is made, and the taxes . . . upon said property.

sions of Section 9 of the Act, 53 P.S. §7143, such claims must be filed with the court of common pleas to be effective. The court accordingly awarded the damages to Mac-Beth, and the present appeal followed.

Before this Court, the City alleges that the court of common pleas erred as a matter of law by concluding that it did not have a valid municipal claim. Specifically, the City alleges that the court's final decree in the City's equity action, authorizing the City to remove the declared nuisance at the Reynolds' expense, automatically gave the City a valid "municipal claim" within the intendment of the Act. We disagree.

The provisions of the Act are clear. Section 1 of the Act defines a "municipal claim" to be, *inter alia,* "the claim *filed* to recover . . . for the removal of nuisances. . . ." (Emphasis added.) Section 4 of the Act, 53 P.S. §7107, provides in part that "[t]he lien for the removal of nuisances shall exist in favor of, and the claim therefore may be *filed* against the property from which it is removed. . . ." (Emphasis added.) Section 9 of the Act, in turn, specifies the time and place for filing municipal claims by providing, *inter alia,* that "municipal claims *must be filed* in said court of common pleas or the Municipal Court of Philadelphia within six months. . . ." (Emphasis added.) Any further doubt as to the necessity of filing a municipal claim under the Act is dispelled by the provisions of Section 1 of the Act of April 4, 1957, P.L. 25, 53 P.S. §7391, which, in defining the instances when an invalid claim may be revived, provides as follows:

> Whenever any county, city . . . has heretofore failed to file in the office of the prothono-

---

As a result of our resolution of this case, we need not and do not address the question of whether this section would give a valid municipal claim first priority to damages awarded in a condemnation proceeding.

tary of the county, any tax claim or municipal claim assessed against any property within the time limit required by law for such filing, *whereby the lien of such tax or municipal claim is lost* . . . may, within six months after the effective date of this act, file such tax or municipal claim. . . .[3] (Emphasis added.)

Since the Act clearly requires municipal claims to be filed to be valid, and since the City clearly did not file its claim with the court of common pleas after it removed the Reynolds' building, we believe the court of common pleas properly concluded that the City's claim was not a "municipal claim" within the intendment of Section 1 of the Act, and properly ordered the distribution of the damages to Mac-Beth.

### ORDER

Now, April 12, 1983, the order of the Court of Common Pleas of Westmoreland County dated April 14, 1982, and docketed at No. 5006 of 1981 is affirmed.

---

[3] It would be too late for the City to avail itself of the revival provisions of Section 1 of the Act of April 4, 1957, in this case since the priority of distribution of the proceeds of a condemnation proceeding are determined "at the date of the filing of the declaration of taking. . . ." Section 521 of the Eminent Domain Code.